T.C. Memo. 1999-162


UNITED STATES TAX COURT


JERRY MYERS JOHNSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14639-97.                    Filed May 13, 1999.


Jerry Myers Johnson, pro se.

<u>Wendy L. Wojewodzki</u>, for respondent.


MEMORANDUM OPINION

FAY, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 1994 Federal income tax of $32,794 and an accuracy-related penalty under section 6662[1] in the amount of $6,559.

---

[1]All section references are to the Internal Revenue Code in effect for 1994, all Rule references are to the Tax Court Rules
(continued...)

After concessions, the sole issue for decision is whether petitioner must recognize discharge of indebtedness income pursuant to section 61(a)(12). Petitioner bears the burden of disproving respondent's determination on this issue. See Rule 142(a).

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Shepherdstown, West Virginia, when he filed his petition. During the year in issue, petitioner timely filed a separate Federal income tax return.

The facts are undisputed. In 1990, petitioner and his former wife, Norene, borrowed $130,612 from PNC Mortgage Corporation of America (PNC) to finance their purchase of a home in Somerset, New Jersey. The Department of Veterans' Affairs guaranteed the loan. In 1994, PNC foreclosed on the property after petitioner and Norene (hereinafter sometimes referred to as the borrowers) had defaulted on their payment obligations. The property was sold for $93,251 by the county sheriff in July 1994. At the time of the foreclosure, the borrowers owed PNC $160,014, consisting of $129,292 mortgage principal, $23,489 accrued and

---

[1](...continued)
of Practice and Procedure, and all dollar amounts have been rounded to the nearest dollar.

unpaid interest, $3,672 in escrow fees, and $3,561 in liquidation expenses. The parties have stipulated that, in March 1994, 4 months before the foreclosure sale, the property had a fair market value of $105,000, and that, after the sale, PNC discharged the balance due in the amount of $66,763. Petitioner was not insolvent when the discharge occurred.

PNC issued petitioner a Form 1099-C (Cancellation of Debt), reflecting that he had received $66,763 in discharge of indebtedness income during 1994. Petitioner did not report any of this amount on his 1994 Federal income tax return. In the notice of deficiency, respondent increased petitioner's income by $66,763. Respondent now concedes that petitioner need report only the amount by which the outstanding balance of the loan exceeds the fair market value of the property. Respondent concedes further that, under section 108(e)(2), petitioner is entitled to exclude the accrued interest of $23,489 from the discharged indebtedness, because payment of that liability would have given rise to a deduction. Thus, according to respondent, the difference of $55,014 (outstanding loan balance of $160,014, less the property's fair market value of $105,000, as stipulated) represents petitioner's discharge of indebtedness, of which only $31,525 is taxable because of the accrued interest exclusion.

Petitioner admits to realizing discharge of indebtedness income. He argues, however, that the full amount should be

excluded from his gross income because the discharge occurred when he was forced into early retirement by "city and state government representatives [who] illegally and unjustly interfered in * * * [his] career as a teacher".

Where a recourse mortgage has been discharged, cancellation of indebtedness income arises to the extent the amount of the debt exceeds the fair market value of the property. See Gehl v. Commissioner, 102 T.C. 784, 786 (1994), affd. without published opinion 50 F.3d 12 (8th Cir. 1995); Bialock v. Commissioner, 35 T.C. 649, 660 (1961); sec. 1.1001-2(c), Example (8), Income Tax Regs. Based on all the surrounding facts and circumstances, a debt is considered discharged the moment it becomes clear that it will never be repaid. See Cozzi v. Commissioner, 88 T.C. 435, 445 (1987).

Respondent argues that, in 1994, when petitioner was discharged from having to pay the balance due on foreclosure, he realized cancellation of indebtedness income. Petitioner makes no argument to the contrary. For example, he presents no evidence suggesting that the unpaid recourse liability survives as a legally enforceable obligation against him or, alternatively, that he had no obligation to repay the loan initially advanced by PNC. Moreover, petitioner does not dispute that, if the indebtedness is found to be taxable, the amount includable is $31,525, the difference between the outstanding loan and the

property's fair market value, or $55,014, less the forgiven interest of $23,489.

Generally, a taxpayer must include in gross income a discharge of indebtedness. See sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs. The rationale for this principle is that, when a debt is forgiven, formerly encumbered assets of the borrower become freely available for his use and enjoyment. Since the loan does not have to be repaid, the newly freed assets constitute income.

There are, however, exceptions to this general rule. Section 108(a) provides that a taxpayer may exclude from gross income the discharge of indebtedness if the discharge occurs in a bankruptcy case, or, alternatively, when the taxpayer is insolvent, or if the indebtedness is qualified farm or business real estate debt. Petitioner concedes that he was not insolvent within the meaning of section 108. Moreover, nothing in the record suggests that the other circumstances described above exist here. Similarly, there is no indication that PNC intended to make a gift to petitioner. See Commissioner v. Jacobson, 336 U.S. 28, 51 (1949) (a gratuitous forgiveness of debt is a gift, resulting in no income to the debtor); Helvering v. American Dental Co., 318 U.S. 322 (1943).

Rather than dispute the facts in this case, petitioner argues that he is entitled to exclude the full amount of

discharged indebtedness, because he had no control over the series of incidents that culminated in the discharge.  To the extent we understand petitioner's argument, it proceeds as follows.  He claims that, in 1994, he was forced to retire early from his profession as a teacher and that, as a result of the financial difficulties he encountered because of a reduced pension, he defaulted on his payment obligations.  According to petitioner, the financial difficulties which ensued after his retirement were a direct consequence of his arrest nearly 20 years earlier by two police officers who also served on the local board of education——an arrest he calls unlawful and in violation of his constitutional rights.  Thus, in petitioner's view, the improper actions by local authorities had caused him to realize discharge of indebtedness income.

While we do not question the sincerity with which petitioner asserts this view, there is no merit to his argument.  Congress did not create an exception to alleviate the kind of hardship that petitioner describes, and we must apply the law as written.  Accordingly, under section 61(a)(12), petitioner must include the $31,525 discharge of indebtedness in gross income.

To reflect the foregoing and concessions by the parties,

<u>Decision will be entered under</u>

<u>Rule 155</u>.